[No. A063697. First Dist., Div. Three. Dec. 1, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN BENNETT RUNNION, Defendant and Appellant.

**COUNSEL**

William P. Cole, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General,

Ann K. Jensen, George F. Hindall III and Christina Kuo, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CORRIGAN, J.**—Defendant appeals from a judgment following conviction by jury of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (b)) and personal use of a firearm (Pen. Code, §§ 1203.06, subd. (a)(1), 12022.5, subd. (a).)[1] Defendant alleges the court's instruction that the word "firearm" includes "handgun" violated due process by removing a necessary element of the use clause from the jury's consideration and amounted to a directed verdict as to that element. We disagree and, accordingly, affirm.

### STATEMENT OF FACTS

Around 11:30 p.m. on March 3, 1993, defendant went into a 7-Eleven store in Walnut Creek and robbed the clerk, Jeffrey Bach. Defendant approached the counter and said, "This ain[']t no bull shit, it's the real thing." As Bach turned toward defendant, he heard a clicking noise which he recognized as the sliding action of a gun being cocked. Bach looked down and saw defendant was holding a handgun pointed at Bach's stomach. Defendant ordered Bach to give him all the money. Bach complied by giving defendant the $1 and $5 bills in the cash drawer. Defendant appeared to uncock the gun and place it in his waistband. He picked up a 7-Eleven hot dog he had laid on the counter and walked out of the store, heading north on South Main Street. Bach immediately called the police.

Shortly thereafter, Officer Edwards saw defendant, who matched the description provided by Bach, walking north on South Main Street. The officer detained defendant on the sidewalk near a planter box. Defendant was holding a wad of papers consisting of a 7-Eleven hot dog wrapper and $5 and $1 bills totaling $61. An unloaded handgun was recovered from the planter box, and a 7-Eleven hot dog container was recovered nearby. The officer recovered several bullets from defendant's pocket. Although these bullets could be placed in the magazine of the recovered gun, they were the wrong caliber to be fired from the weapon. Bach was transported by another officer to the scene of the detention, where he identified defendant.

---

[1]Penal Code section 1203.06, subdivision (a)(1) prohibits probation or a suspended sentence when a defendant personally uses a firearm in the commission or attempted commission of one of several enumerated felonies, including robbery. Penal Code section 12022.5, subdivision (a) provides for a sentence enhancement of three, four or five years when a defendant personally uses a firearm in the commission or attempted commission of any felony. These sections shall hereafter be referred to as "the use clause."

The recovered handgun was received in evidence as People's exhibit No. 6 (People's No. 6). Bach identified People's No. 6 as the gun used by defendant. Officer Edwards pointed out the sliding mechanism used to cock the weapon.

Defendant testified he had little memory of the events of March 3, 1993. He had been abusing alcohol, heroin, and methamphetamine since the previous January when his marriage fell apart. He recalled obtaining the gun from a friend named Bob on the day of the robbery. In his depression, he tried to kill himself with the weapon, but it would not work. Defendant recalled being in the 7-Eleven on March 3, but remembered nothing other than having a hot dog and leaving the store. Defendant admitted being familiar with the basic operation of the gun, including the slide, magazine, and trigger.

As to the use clause, the court instructed the jury according to CALJIC No. 17.19 (1993 rev.) (5th ed. pocket pt.). Over defense counsel's objection, the court omitted the bracketed definition of a firearm as derived from Penal Code section 12001, subdivision (b).[2] In its stead, the court used the alternate bracketed language, simply instructing the jury: "The word 'firearm' includes handgun." Defense counsel never argued to the jury that People's No. 6 was not a firearm or a handgun. The defense did argue there was no evidence that People's No. 6 was operable. The court correctly instructed the jury that operability was not an element of the use clause.

## DISCUSSION

A use clause finding in this case required the jury to find that defendant (1) personally used (2) a firearm (3) in the commission or attempted commission of a robbery. Defendant has raised no issue as to the first and third of these elements. As to the second element, defendant alleges the court's instruction that "[t]he word 'firearm' includes handgun" impermissibly removed a question of fact from the jury's consideration, amounting to a directed verdict as to that element and a violation of due process. Defendant further alleges his trial counsel correctly proposed that the jury be instructed according to the definition of a firearm contained in Penal Code section 12001, subdivision (b).

Due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (*In re Winship* (1970) 397 U.S. 358, 364

---

[2] Penal Code section 12001, subdivision (b) reads: "As used in this title, 'firearm' means any device, designed to be used as a weapon, from which is expelled through a barrel a projectile by the force of any explosion or other form of combustion."

[25 L.Ed.2d 368, 375, 90 S.Ct. 1068].) Consequently, ". . . any instruction or failure to instruct which would permit the state to circumvent the requirement that it prove every fact necessary for conviction beyond a reasonable doubt" would be a denial of due process. (*People* v. *Garcia* (1984) 36 Cal.3d 539, 551 [205 Cal.Rptr. 265, 684 P.2d 826], disapproved on other grounds in *People* v. *Lee* (1987) 43 Cal.3d 666, 676 [238 Cal.Rptr. 406, 738 P.2d 752].)

 Defendant claims the instruction that the word "firearm" includes "handgun" allowed the state to circumvent the requirement that it prove the object used by defendant in the commission of the robbery was a firearm. A review of analogous cases is instructive.

In *People* v. *Figueroa* (1986) 41 Cal.3d 714 [224 Cal.Rptr. 719, 715 P.2d 680], the defendants were charged with the sale of unqualified securities in violation of Corporations Code section 25110. The trial court there erred by instructing the jury that the promissory notes in question were "securities" under the Corporations Code. "If a judge were permitted to instruct the jury on the basis of assertedly 'undisputed' evidence that a particular element had been established as a matter of law, the right to a jury trial would become a hollow guarantee." (*Figueroa*, *supra*, at p. 730.)

In *People* v. *Lawson* (1987) 189 Cal.App.3d 741 [234 Cal.Rptr. 557], the defendant was convicted following a similar prosecution. There, the court erred by instructing the jury that certain purchases of accounts receivables were "securities" under the Corporations Code. "[A]lthough the definition of a security is a matter of law, whether a particular item satisfies the definition is a question of fact. [Citation.] In this way, the *Figueroa* court expressly disapproved those California appellate decisions which held a trial court could instruct a particular instrument was a security." (*Lawson*, *supra*, at p. 747.)

The failure in *Figueroa* and *Lawson* was not repeated here. The court did not instruct the jury that a particular element had been established, as it would have done had it instructed the jury that People's No. 6 was a firearm or a handgun. Instead, the court merely, and correctly, instructed that the legal definition of a firearm included a handgun. The jury was left to determine whether People's No. 6, the item at issue in the case before them, was a handgun.

Defense counsel's argument is similar to that raised in *People* v. *Brown* (1988) 46 Cal.3d 432 [250 Cal.Rptr. 604, 758 P.2d 1135], wherein the defendant was sentenced to death following a conviction for murder with the special circumstance of intentionally killing a peace officer engaged in the

performance of his duties. (Pen. Code, § 190.2, subd. (a)(7).) The court there utilized the instruction applicable to that special circumstance, CALJIC No. 8.81.7, but added its own language: "For the purposes of these instructions, a Garden Grove Regular Police Officer and a Garden Grove Reserve Police Officer are peace officers." (*Brown, supra*, at p. 443, italics deleted.)

Brown argued that this instruction violated due process by removing an essential element of the special circumstance from the jury's consideration, namely that the victim was a peace officer. The Supreme Court disagreed, distinguishing *People v. Figueroa, supra*, 41 Cal.3d 714: "We held in *Figueroa* the court erred in instructing that particular promissory notes at issue in that case were securities as a matter of law. As noted, the court here did *not* instruct the jury that *Officer Reed* was a peace officer as a matter of law; it merely instructed pursuant to the unquestionable and clear terms of the relevant statutes that Garden Grove police officers are peace officers." (*People v. Brown, supra*, 46 Cal.3d at p. 444, fn. 6, italics in original.)

The relevant statutes in *Brown* were Penal Code sections 7, subdivision 8 and 830.1, subdivision (a), which define peace officers for the purpose of the Penal Code. Although Garden Grove police officers are not specifically enumerated in those statutes, the trial court correctly concluded that Garden Grove police officers fell within the legal definition of peace officers. Here, the relevant statute, Penal Code section 12001, subdivision (b), does not specifically enumerate handguns. Yet, the trial court correctly concluded that handguns fell within the legal definition of firearms. Just as the jury in *Brown* was left to determine whether Officer Reed was a Garden Grove police officer, the jury here was left to determine whether People's No. 6 was a handgun.[3]

In 1990, the state Legislature amended Penal Code section 12001 to include the current subdivision (b) and its full definition of firearms. (Stats. 1990, ch. 9, § 1.5.) That definition appears intended to incorporate nontraditional firearms within the ambit of the Dangerous Weapons' Control

---

[3]Counsel on appeal dispute whether "firearm" has a plain, ordinary meaning. It is clear that "handgun" has such a meaning and further that "handgun" fits within the legal definition of "firearm." The Attorney General argues that no further definition of "firearm" was necessary because the statutory definition (Pen. Code, § 12001, subd. (b)) is consistent with the ordinary meaning of the word. Indeed, "firearm" is commonly defined as "any weapon from which a shot is fired by the force of an explosion; esp., such a weapon small enough to be carried, as a rifle or pistol." (Webster's New World Dict. (3d college ed. 1988) p. 508.) More significantly, "handgun" is defined as "any firearm that is held and fired with one hand, as a pistol." (*Id.* at p. 611.)

Law (Pen. Code, tit. 2, ch. 1, §§ 12000-12101).[4] When, as here, the gun appears to be a traditional firearm, there is no need for the court to instruct the jury more expansively. The court was correct in concluding the full definition of "firearm" would be confusing to the jury. ■ "Jury instructions must be responsive to the issues, which in a criminal case, are determined by the evidence [citation.]" (*People v. Preston* (1973) 9 Cal.3d 308, 319 [107 Cal.Rptr. 300, 508 P.2d 30].)[5]

■ Finally, defense counsel argues that the court should have instructed on the definition of "firearm" because the applicable CALJIC instruction, No. 17.19 (1993 rev.) (5th ed. pocket pt.), contains that definition. However, that definition is bracketed within the instruction, suggesting its deletion may be appropriate in favor of alternate bracketed language. The alternate language, which the court used here, provides the option simply to insert a type of firearm, such as handgun.

■ CALJIC instructions are not binding in and of themselves. They are drafted by a distinguished group of legal scholars and their contribution to the clarity and accuracy with which juries are instructed has been invaluable. Nevertheless, the trial court is not obligated, necessarily, to repeat the words chosen by the CALJIC Committee, however helpful they may be. Instead, the trial court's obligation is to state the law correctly. Here the court has done so.

DISPOSITION

The judgment is affirmed.

White, P. J., and Chin, J., concurred.

---

[4]The clear import of Penal Code section 12001, subdivision (b) is to expand the definition of firearms for the purpose of regulating their possession by certain individuals and for the purpose of regulating the transfer of possession. (Legis. Counsel's Dig., Assem. Bill No. 497 (1989-1990 Reg. Sess.).)

[5]We note the dictum in *People v. Lawson, supra,* wherein the court opined, "Even such a simple concept as 'a gun is a firearm,' must be conveyed to the jury in definitional terms so as to permit the jury to apply the instruction in its factfinding/law-applying function." (189 Cal.App.3d at p. 748.) We believe this characterization overstates the holding of *People v. Figueroa, supra,* 41 Cal.3d at page 742, to which it makes reference and further note that the *Lawson* court appears to derive the "rule" from Justice Reynoso's concurrence in *Figueroa* wherein he criticized the breadth of the majority opinion which might necessitate such an instruction. (See *Lawson, supra,* 189 Cal.App.3d at p. 747.)