**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THEODORE BEECH MEDLEY,
        *Petitioner-Appellant,*

v.

D. L. RUNNELS, Warden,
        *Respondent-Appellee.*

No. 05-55295

D.C. No.
CV-03-01509-LGB

OPINION

Appeal from the United States District Court
for the Central District of California
Lourdes G. Baird, District Judge, Presiding

Argued and Submitted
June 20, 2007—San Francisco, California

Filed November 1, 2007

Before: Mary M. Schroeder, Chief Judge, Stephen Reinhardt,
Michael Daly Hawkins, Sidney R. Thomas,
Barry G. Silverman, Kim McLane Wardlaw,
Raymond C. Fisher, Ronald M. Gould, Richard A. Paez,
Marsha S. Berzon, Richard C. Tallman, Richard R. Clifton,
Jay S. Bybee, Consuelo M. Callahan, and Sandra S. Ikuta,
Circuit Judges.

Opinion by Judge Callahan
Partial Concurrence and Partial Dissent by Judge Ikuta

14365

**COUNSEL**

Wayne Young, Santa Monica, California, for petitioner-appellant Theodore B. Medley.

Robert M. Foster, Supervising Deputy Attorney General, San Diego, California, for respondent-appellee D. L. Runnels, Warden; Bill Lockyer, Attorney General of the State of California, Robert R. Anderson, Chief Assistant Attorney General, and Gary W. Schons, Senior Assistant Attorney General, were on the brief.

## OPINION

CALLAHAN, Circuit Judge:

Theodore Beech Medley appeals from the district court's order denying his 28 U.S.C. § 2254 habeas corpus petition challenging his conviction for murder in state court and a related twenty-year enhancement for discharge of a firearm during commission of a felony. Medley alleges that: (1) he received ineffective assistance of counsel when his attorney ignored Medley's requests to testify; (2) the state trial court violated his right to due process by instructing the jury that a flare gun is a firearm, thus taking from the jury the determination of an element of the offense; and (3) he received ineffective assistance of counsel when his trial and appellate counsel failed to contest the jury instructions. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the district court's denial of Medley's petition for a writ of habeas corpus as to the first issue. As to the firearm enhancement, we reverse and remand with instructions to grant a conditional writ of habeas corpus, with instructions for the state court either to resentence without applying the firearm enhancement or to allow the State to retry the enhancement charge under California Penal Code section 12022.53(c) within a reasonable time as set by the district court.[1]

I.

In 1998, Medley roomed with Michael Gonzales in Riverside, California. The two had quarreled, and Medley told a witness, his girlfriend Amie Denby, that he was going to get his flare gun to get rid of Gonzales. Medley retrieved a flare gun and returned to a park where he found Gonzales. Medley shot Gonzales with a flare, but it did not harm him. Gonzales

---

[1]Because we are vacating Medley's sentence enhancement, we need not consider Medley's third argument, that he received ineffective assistance of counsel with respect to the jury instructions.

ran and Medley pursued. Medley tried again to shoot Gonzales with a flare but missed. Medley then discarded the flare gun, pulled out a pocket knife, and chased down Gonzales. Medley inflicted more than four dozen knife wounds, eventually slitting Gonzales's throat from ear to ear. Medley and Denby then took the victim's car. Medley confessed the details of the murder to Denby, who later testified against him. Medley was arrested soon after the murder. Police found the discarded flare gun in the park.

Medley was charged with murder, including an enhancement for discharge of a firearm during the felony. At the start of the trial, Medley's attorney informed the court that he intended to challenge the assertion that a flare gun was a firearm. Relying on California Penal Code section 12001(b), which defines a firearm as "any device designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion, or other form of combustion," the trial court concluded that "in fact, that's how the flare gun works. If it falls within that definition, it certainly qualifies. . . . If in fact [the expert witness] testifies that's how it works, then the issue is moot." Later, during the jury phase of the trial, an expert witness testified that a flare gun operates by expelling a flare through a tube by means of an explosion similar to how an ordinary firearm operates. The judge then instructed the jury that "[a] flare gun is a firearm." Medley did not specifically object to this jury instruction.

During the trial, the defense relied on the theory that someone else had killed Gonzales but did not call any witnesses. After the defense had rested—but before final arguments—Medley informed the court that he wished to testify, but his lawyer had not permitted it. At that time, Medley's lawyer informed the court that he had advised Medley not to testify because he would be impeached with his prior convictions and by the details of a lengthy interview Medley gave police after his arrest.

A jury convicted Medley of murder and of discharge of a firearm during commission of a felony. On direct appeal, Medley challenged the jury instructions on other grounds but did not mention the flare gun jury instruction.

Medley then filed a state habeas petition in California Superior Court, which denied the petition as an attempted second appeal. The California Court of Appeal and California Supreme Court both denied Medley's request for habeas relief without commenting on the merits. Medley's habeas petition to the superior court focused on alleged ineffective assistance of counsel ("IAC"), but his petitions to the state appellate courts also argued that the trial court had erred by instructing the jury that a flare gun was a firearm.

Medley then filed a federal habeas petition in the District Court for the Central District of California, again arguing IAC and violation of the right to a jury determination with respect to whether the flare gun was a firearm. The district court denied the writ, holding that the statutory definition of "firearm" was a question of state law, and therefore it was unreviewable on a federal habeas petition. After a three-judge panel of this court affirmed in a memorandum disposition, we granted rehearing en banc.[2]

## II.

Medley first claims that his attorney provided ineffective assistance by denying him the right to testify. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court can grant relief only if the state court decision affirming a petitioner's conviction was "contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or if the State proceeding "resulted in a

---

[2]*Medley v. Runnels*, 188 Fed. Appx. 580 (9th Cir. 2006); *Medley v. Runnels*, 486 F.3d 1127 (9th Cir. April 30, 2007).

decision that was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254(d).

**[1]** *Strickland v. Washington*, 466 U.S. 668 (1984), sets forth the constitutional standard for relief based on ineffective assistance of counsel. *See Dows v. Wood*, 211 F.3d 480, 484-85 (9th Cir. 2000). To succeed on an IAC claim, the defendant must show: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The Supreme Court further noted that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered . . . as a result of the alleged deficiencies." *Id.* at 697.

**[2]** Medley has not shown that his inability to testify was prejudicial. Medley argues that he would have testified that he killed Gonzales in self-defense. Medley's lawyer recommended that Medley not testify because he would have been impeached by his prior convictions and statements he made during a lengthy interview he gave police, which apparently were inconsistent with what Medley intended to testify. Moreover, as the Appellee ("the State") points out, Medley's self-defense testimony would have been inconsistent with the "someone else did it" defense previously advanced. Also, there was more than sufficient other evidence to convict Medley. Medley's girlfriend testified that Medley admitted to the murder, with no mention of any need to act in self-defense, and that Medley had described the details of the crime right after it occurred exactly as did the forensic experts who would later testify as to how the crime transpired. In addition, Medley's story of self-defense would have been undermined by his theft of the victim's car and the fact that the victim had more than four dozen knife wounds (which would appear to go well beyond the force necessary for self-defense). In sum, our review of the record convinces us that the testimony Medley wished to give would not have affected the outcome of the trial. Accordingly, Medley has failed to prove that the alleged

IAC was prejudicial with respect to his murder conviction, and he is not entitled to relief on this issue. *See id.* at 687.

### III.

The heart of Medley's appeal is the contention that the trial court denied him due process when the trial judge instructed the jury that a flare gun is a firearm. Under AEDPA, Medley is only entitled to relief if the state court decision affirming his conviction was an unreasonable application of clearly established federal law or the State proceeding resulted in a decision that was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

**[3]** The Supreme Court has held that "the Due Process Clause [of the Fourteenth Amendment] protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). In addition, every fact necessary to increase the sentence beyond the statutory maximum (other than the fact of prior conviction) must be proved to a jury beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Trial courts may not create mandatory presumptions which relieve the prosecution of its burden to prove facts to the jury beyond a reasonable doubt. *Sandstrom v. Montana*, 442 U.S. 510, 516-17, 524 (1979). Furthermore, mixed questions of law and of fact must be resolved by the jury. *United States v. Gaudin*, 515 U.S. 506, 514 (1995) ("[T]he jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence."). However, a trial judge may instruct the jury as to the meaning of purely legal terms. *See Hamling v. United States*, 418 U.S. 87, 118 (1974).

**[4]** The Supreme Court has also held that "a state court's interpretation of state law, including one announced on direct

appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604 (2005). Therefore, a federal court may not overturn a conviction simply because the state court misinterprets state law. *See id.* at 605; *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). However, an "unforeseeable state-court construction of a criminal statute" may deprive a defendant of due process of law, because in that circumstance the defendant lacks "fair warning that his contemplated conduct constitutes a crime." *Bouie v. City of Columbia*, 378 U.S. 347, 354-55 (1964).

## IV.

Before addressing the merits of Medley's flare gun argument, we consider certain procedural hurdles. On habeas review, we look through unexplained state court decisions leaving, in effect, the denial of post-conviction relief to the last reasoned state court decision to address the claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 804-06 (1991); *see also* 28 U.S.C. § 2254(d).

## A.

The State suggests that there was no decision at all in the state courts with respect to the flare gun issue, and therefore, a federal court sitting in habeas has nothing to review. The State notes that neither the California Court of Appeal nor the California Supreme Court discussed the flare gun issue and argues that the trial court's ruling on the issue was not sufficient to qualify as a reasoned decision. In other words, because the state courts did not explicitly rule on the issue, no federal court can rule on it either.

We disagree. The trial court effectively ruled on this issue when it decided that if the prosecution presented evidence as to how a flare gun functions, then the issue of whether the flare gun was a firearm would be moot. The trial judge stated:

"So, in fact, that's how the flare gun works. If it falls within that definition, it certainly qualifies. . . . If in fact [the expert witness] testifies that's how it works, then the issue is moot." Although terse, this pretrial ruling constituted the last reasoned decision under *Ylst*. Therefore, we review the ruling of the trial court.[3]

B.

Another procedural hurdle to federal habeas relief is that generally a petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Here, Medley raised the flare gun issue in his state habeas petition. The State does not generally contest that this collateral attack was sufficient to exhaust the claim,[4] but it asserted at oral argument that the claim Medley makes now is not identical to the one that was exhausted in state court. The State contends that Medley had only argued in state court that the judge had given the jury a conclusive presumption, which, in the State's view, is not taking a finding of fact from the jury. Although a conclusive presumption and a finding of fact are analytically distinct, Medley's constitutional claim is nonetheless the same: he claims he was convicted based on a fact not proved to the jury beyond a reasonable doubt. He asserted this constitutional claim in his state habeas petitions, and his collateral challenge is sufficient

---

[3]Even if the state courts had not ruled on this issue, the lack of a ruling would not be a bar to habeas review. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 ("[W]hen it is clear that a state court has not reached the merits of a properly raised issue, we must review it de novo."). Further, when a state court does reach a decision on the merits but provides no reasoning for the decision, we conduct "an independent review of the record . . . to determine whether the state court clearly erred in its application of controlling federal law." *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000); *see also Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

[4]At oral argument, the State also expressly confirmed that it was not asserting that the state court's decision constituted a procedural bar to this claim.

to constitute exhaustion. *See Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (explaining that a habeas petitioner has satisfied the exhaustion requirement if the federal claim was presented to the highest state court with jurisdiction to consider it).

V.

**[5]** The State does not dispute that every fact necessary to prove an element of the offense must be proved to the jury. The State argues, however, that when the court instructed the jury that "a flare gun is a firearm," the court did not create a mandatory presumption or relieve the prosecution of the need to prove any fact. Rather, according to the State, the trial court merely provided the jury with a legal interpretation of the word "firearm." California Penal Code section 12022.53(c) provides: "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), personally and intentionally discharges a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 20 years." A firearm, for purposes of this offense, is defined as "any device, *designed to be used as a weapon*, from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion." Cal. Pen. Code § 12001(b) (emphasis added).

In *Sandstrom* the Supreme Court confronted an analogous situation involving whether a jury instruction took an element of an offense away from the jury. The Court explained:

> It is clear that under Montana law, whether the crime was committed purposely or knowingly is a fact necessary to constitute the crime of deliberate homicide. Indeed, it was the lone element of the offense at issue in Sandstrom's trial, as he confessed to causing the death of the victim, told the jury that knowledge and purpose were the only questions he was controverting, and introduced evidence solely on those

points. . . . Thus, the question before this Court is whether the challenged jury instruction had the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of petitioner's state of mind.

*Sandstrom*, 442 U.S. at 520-21 (internal citations omitted). The question before us is analogous to the issue in *Sandstrom*: Did the trial judge's instruction that "[a] flare gun is a firearm" relieve the State of the burden of proof enunciated in *Winship* on the critical question of whether Medley's flare gun was designed to be used as a weapon?

The State concedes that it must prove as an element of the offense that the defendant discharged a "firearm." *See People v. Jacobs*, 193 Cal. App. 3d 375, 380 (Cal. Ct. App. 1987) ("Whether the defendant was armed with and personally used a firearm are factual questions for the jury's determination.") (citation omitted). The State asserts, however, that the word "firearm" is a legal term of art and that the trial judge merely informed the jury that as a legal matter, a flare gun was a firearm, and the jury was still left to decide whether Medley had discharged the flare gun during the commission of a murder.

**[6]** Medley counters that "firearm" is defined by statute, and the statute creates distinct sub-elements of the crime which the prosecution is required to prove. In other words, according to Medley, the jury must decide whether the object used by the defendant was in fact (1) designed to be used as a weapon and (2) expels a projectile (3) through a barrel, (4) by the force of an explosion or other form of combustion. We agree. In order to prove that the object Medley carried was a firearm under the statute, the prosecution had to prove to the jury beyond a reasonable doubt each of these four sub-elements. By instructing the jury that a flare gun is a firearm, the court did not permit the jury to make the factual determination as to whether the object used by Medley was designed to be used as a weapon and expels a projectile through a bar-

rel by the force of an explosion. The State's arguments to the contrary are not persuasive.[5]

## A.

The State presents four counterarguments to Medley's contention.[6] First, the State argues that whether "designed to be used as a weapon" is an element of the offense is an interpre-

---

[5]The dissent contends that the trial judge's instruction that "[a] flare gun is a firearm" was an interpretation of state law. For the reasons described above, we disagree. There is no dispute that we are bound by a state trial court's interpretation of a state law, whether delivered as part of a jury instruction or anywhere else. Where we differ with the dissent is that we do not think that the trial court's jury instruction, or the court's in limine ruling on the issue, can plausibly be construed as an interpretation of state law. The dissent argues that the Supreme Court has held that jury instructions are interpretations of state law which are binding on federal courts. *See* dissent Op. at 14391 citing *City of Houston v. Hill*, 482 U.S. 451, 470 (1987) (quoting *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949)). The precedents cited by the dissent, however, stand for the proposition that jury instructions may, but do not necessarily, constitute an interpretation of state law. Courts sometimes interpret state law in the course of giving the jury an instruction, but the trial judge did not do so here.

It is true, as the dissent points out, that *Winship* does not speak about "sub-elements," a term we use to help clarify our reasoning. However, *Winship* speaks clearly about "fact[s] necessary" to prove an offense. Whether the flare gun used by Medley was "designed to be used as a weapon" (whether that means designed by a manufacturer or designed by the defendant) is a fact question. It therefore falls squarely within *Winship*'s provision that "every fact necessary to constitute the crime with which he is charged" must be proved to the jury beyond a reasonable doubt. *Winship*, 397 U.S. at 364; *see also United States v. Booker*, 543 U.S. 220, 230 (2005) (quoting *Winship*). The trial court's jury instruction that a flare gun is a firearm was contrary to this clearly established law.

[6]The State's fourth argument, made in passing in its brief, is that the term "firearm" "includes" but "does not require that the item must have been designed as a weapon." The State cites section 12001(a)(1) which defines "pistol" and "revolver" as "apply[ing] to and includ[ing] any device designed to be used as a weapon." But the relevant section for Medley's offense is 12001(b), not 12001(a)(1), and the State has not suggested that a flare gun qualifies as a pistol or revolver.

tation of state law, and therefore a federal court sitting in habeas may not second-guess the determination that it is not an element of the offense.

[7] It is true that the elements of a state crime are determined by state law, and state legislatures have broad discretion to define the elements of a crime. *See Patterson v. New York,* 432 U.S. 197, 208-09 (1977). Nevertheless, once a state's criminal laws are written, a defendant has the due process right to insist that the state prove beyond a reasonable doubt every element of the offense charged. *See Sandstrom*, 442 U.S. at 520-21.

[8] The lack of precedent on the meaning of "designed to be used as a weapon" undermines the State's assertion that the trial court was applying state law. In *Sandstrom* there was clear precedent from the state supreme court that mens rea was an element of the offense there in issue—a fact which somewhat differentiates *Sandstrom* from the instant case. *Id.* at 520 n.10 (citing *State v. McKenzie*, 581 P.2d 1205, 1232 (Mont. 1978)). Here there is no precedent from any California court concerning whether "designed to be used as a weapon" is a sub-element of the offense. This lack of state precedent or statute clarifying "designed to be used as a weapon" defeats the State's argument. If the California Supreme Court had held that, as a matter of law, a flare gun is a firearm under the statute, or that a flare gun, as a matter of law, is designed to be used as a weapon, then the trial court could plausibly be said to have been applying state law. However, there is no such precedent, and at oral argument the State acknowledged that the trial court never explicitly ruled on whether "designed to be used as a weapon" is an element of the offense— although the court implicitly treated it as not being an element. To ignore the "designed to be used as a weapon" sub-element, or *sub silentio* to treat it as a non-element, might be acceptable when there is clearly established precedent or when the clear language of the statute supports the court's

actions, but a trial court does not interpret state law by ignoring an element of the offense.

## B.

**[9]** The State's second argument is that even if the trial court's ruling was not just an issue of state law and a federal court sitting in habeas may review the issue, the trial court's instruction was proper because the definition of "firearm" is purely a legal issue and not a question of fact. The State relies on *People v. Runnion*, 30 Cal. App. 4th 852, 857 n.3 (Cal. Ct. App. 1994), which reasoned that "[a] 'handgun' fits within the legal definition of 'firearm.' " In *Runnion*, the defendant used a semi-automatic pistol in an armed robbery and argued that for the firearm enhancement to apply the prosecution had to present evidence that the handgun was functional — but the defense did not deny that it was a handgun. *Id.* at 855. The trial court decided that the statute did not require the handgun to be operational and that the statutory definition of firearm included a handgun. *Id.* at 857 n.3. Moreover, the Court of Appeal, in upholding the trial court's jury instruction, explained that "[w]hen, as here, the gun appears to be a traditional firearm, there is no need for the court to instruct the jury more expansively." *Id.* at 858. Thus, *Runnion*, while affirming that the trial judge may instruct the jury that a traditional handgun is a firearm, suggests that the issue must go to the jury when the object in question is not a traditional firearm, or when the defense raises a legitimate question as to whether the device meets the factual predicates for a "firearm." Accordingly, we do not read *Runnion* as supporting the State's argument that whether "a flare gun is a firearm" is a pure legal issue rather than a question of fact.[7]

---

[7]There is some question whether *Runnion* is compatible with more recent United States Supreme Court precedents that have strengthened the jury's role in deciding mixed questions of law and fact. *See Gaudin*, 515 U.S. at 518 (holding that materiality in a perjury prosecution was a matter for the jury). We need not decide whether *Runnion* remains good law because the instant case is easily distinguishable from *Runnion* — a flare gun is not a traditional firearm and whether the object in question met the factual predicates for "firearm" was not, and could not reasonably have been, challenged in *Runnion*.

The State also cites *Stanton v. Benzler*, 146 F.3d 726 (9th Cir. 1998), in which we held that a trial court's instruction to the jury that arsenic trioxide is a poison did not violate Stanton's right to due process. In *Stanton*, however, we explained that "[t]he California Court of Appeal, in affirming Stanton's conviction, held that arsenic trioxide is a poison under various other California statutes and thus was not a factual question for the jury to decide." *Id.* at 728. There is no question that the state legislature could define a flare gun as a firearm. Had flare guns been defined elsewhere in the statutes as firearms for purposes of Penal Code section 12022.53(c), then *Stanton*'s reasoning would apply. *Stanton*, however, provides no support for the State in the instant case because there is no statute defining a flare gun as a firearm for purposes of Medley's crime—nor, as we previously noted, is there any precedent to that effect. Accordingly, there is no basis on which the trial court could have defined a flare gun to be a firearm as a matter of law.

## C.

The State's third argument is that even if the phrase "designed to be used as a weapon" is a sub-element of the offense, this language could reasonably be interpreted to mean "intended to be used as a weapon by the criminal." The State acknowledges that even under this interpretation, there would be a question of fact which was never presented to the jury. It contends, however, that not presenting this question to the jury was harmless error because there was uncontradicted testimony that Medley used the flare gun to shoot at his victim. Thus, the jury would be compelled to conclude that Medley intended to use the flare gun as a weapon.

One problem with the State's argument is that the trial court never interpreted "designed to be used as a weapon."[8]

---

[8]We need not decide the meaning of the phrase "designed to be used as a weapon," and we leave it to California courts to address this state law

Rather, the trial court instructed the jury that as a matter of law a flare gun was a firearm. In doing so, the court concentrated on how a flare gun "works" and offered no comment on the sub-element of whether it was "designed to be used as a weapon." Accordingly, Medley had no notice at trial of the interpretation now urged by the State, and we do not consider the merits of it here.

**[10]** The fact that Medley was not on notice of this interpretation undermines the State's argument for harmless error. The test for harmless error on habeas review is "whether the error had a 'substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Had the trial court actually ruled that "designed to be used as a weapon" meant "intended to be used as a weapon," the defense would have been able to offer an alternative interpretation. The interpretation now offered by the State is questionable, and had Medley been afforded the opportunity to challenge this interpretation there is a reasonable likelihood that he might have obtained a different jury instruction, and he might have been acquitted on the charge of firearm use. We cannot conclude that the jury would have convicted Medley of use of a "firearm" had the court considered the interpretation of the statute which the State urges on appeal, rather than simply ignoring this sub-element — as actually happened. Therefore, the trial court's jury instruction denied Medley due process, and the error was not harmless.

## VI.

**[11]** Because "designed to be used as a weapon" is an element of the offense and an issue of fact, the trial court's direc-

question in the first instance. At oral argument the State requested that we certify this question to the California Supreme Court. We decline to do so because, whatever the meaning of the phrase at issue, in this case a factual question exists which must be proved to the jury beyond a reasonable doubt. Accordingly, we address the State's contention only to the extent necessary to explain that not presenting the issue to the jury was not harmless error.

tion to the jury that a flare gun is a firearm was constitutional error. This instruction took a critical issue of fact away from the jury in violation of clearly established constitutional law. *Gaudin*, 515 U.S. at 518; *Winship*, 397 U.S. at 364. Accordingly, Medley's enhancement for violating section 12022.53(c) must be vacated. The district court's judgment is affirmed in part and reversed in part. We remand with instructions to issue a conditional writ of habeas corpus directing the State either to resentence Medley without applying the firearm enhancement or to retry the section 12022.53(c) charge within a reasonable time as set by the district court.

**AFFIRMED in part; REVERSED in part; and REMANDED WITH DIRECTIONS**.

IKUTA, Circuit Judge, concurring in part and dissenting in part:

The majority errs doubly in its analysis of Medley's due process claim: it applies AEDPA deference incorrectly where AEDPA doesn't apply at all. Under 28 U.S.C. § 2254(d), AEDPA's deferential standard of review operates only "with respect to any claim that was adjudicated on the merits in State court proceedings." Because Medley's due process claim was not adjudicated on the merits in state court, it cannot be considered under AEDPA. The majority, wrongly holding that AEDPA does apply, errs again by applying it without the deference that AEDPA and Supreme Court precedent demand. I therefore dissent.

I

The state trial court interpreted "firearm" in § 12022.53(c) of the California Penal Code to include "flare gun" and so

instructed the jury.[1] Although the trial court raised and discussed the issue of whether a flare gun qualified as a firearm under California law during pretrial proceedings, Medley did not raise a constitutional challenge to the instruction and the trial court did not discuss the instruction's constitutional implications. This pre-trial discussion is not "the state court's determination of the federal issue[ ]," *Himes v. Thompson*, 336 F.3d 848, 852 (9th Cir. 2003), but merely a state law determination which is irrelevant on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Nor did Medley raise the constitutionality of the instruction on direct appeal; his first mention of the federal constitutional dimension of his jury instruction issue was in his state habeas petition to the state appellate court. The California Court of Appeal and the California Supreme Court summarily denied Medley's petitions for habeas relief as procedurally barred. As discussed below, the majority errs by failing to recognize the procedural posture of this case and by attempting to apply AEDPA when there is no state adjudication on the merits to which AEDPA deference is owed.

A

The majority's first mistake is procedural. As a threshold matter, the majority does not consider whether Medley's due process claim has been exhausted. Ordinarily, a petitioner cannot be granted federal habeas relief unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "A petitioner has satisfied the exhaustion requirement if: (1) he has 'fairly presented' his federal claim to the highest state court with jurisdiction to consider it, or (2) he demonstrates that no state remedy

---

[1]California Penal Code § 12022.53(c) states: "Notwithstanding any other provision of law, any person who, in the commission of a [specified] felony . . . personally and intentionally discharges a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 20 years."

remains available." *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (quotations and citations omitted). As stated above, Medley did not raise his constitutional claims until his state habeas petitions. The California Supreme Court denied Medley's habeas petition citing *In re Swain* (1949) 34 Cal. 2d 300, 304 and *People v. Duvall* (1995) 9 Cal. 4th 464, 474. These cases discuss procedural requirements for properly pleading a claim for state habeas relief. We have recognized that a summary denial by the California Supreme Court citing *Swain* is a denial based on a procedural defect and further that such a denial may mean "the available state remedies have not been exhausted as the California Supreme Court has not been given the required fair opportunity to correct the constitutional violation." *Harris v. Sup. Ct.*, 500 F.2d 1124, 1128 (9th Cir. 1974). Although the State did not argue that Medley had failed to exhaust this claim, "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3). Medley does not argue that any of the exceptions to the exhaustion requirement are applicable. *See* 28 U.S.C. § 2254(b)(1)(B). Therefore, if Medley would still be allowed to raise his due process claim in California courts, we cannot reach it here.

On the other hand, if Medley "can no longer raise [his claim] through any state procedure, state remedies are no longer available, and are thus exhausted" by virtue of a procedural bar. *Franklin v. Johnson*, 290 F.3d 1223, 1231 (9th Cir. 2002). If raised by the State, such a procedural bar provides an independent and adequate state ground for denying the claim in federal court, absent a showing of cause and prejudice or a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 497 U.S. 478, 488 (1986).

Here the state appears to have waived any claim of procedural bar by failing to raise it on appeal. *See Vang v. Nevada,*

329 F.3d 1069, 1073 (9th Cir. 2003). Under these circumstances, we must consider whether to raise the procedural bar *sua sponte*. *See Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998). In *Windham*, we applied the procedural bar even though the state failed to raise it. Based on principles of federalism and comity, we "decline[d] to permit a defendant, represented by counsel at trial, to fail to raise an issue before the trial judge, await the outcome of the jury's deliberations, and then seek federal habeas corpus relief, after the state's highest court has declined to reach the merits of his federal constitutional claim because it is procedurally barred by state law." *Id.* Nevertheless, because the petitioner in *Windham* did not have an opportunity to argue that he met the criteria for overcoming the state's procedural bar, we remanded the matter to the district court to give the petitioner "an opportunity to present a cause and prejudice justification for his procedural default." *Id.*

Here we too are faced with a represented defendant who failed to raise his constitutional issue in a manner that would have allowed the state court to address it on the merits. Guided by *Windham*, we should remand this case to the district court to consider arguments that there is cause for the default and prejudice.

The majority does not consider the implications of the procedural bar in this case. However, the majority's implicit decision not to raise the procedural bar *sua sponte* leaves the majority only one procedural alternative. In those rare circumstances where the state has waived the procedural bar, and we nevertheless decide to proceed to the merits, we have held that de novo review is the applicable standard. *See Chaker v. Crogan*, 428 F.3d 1215 (9th Cir. 2005). In *Chaker*, the petitioner raised a constitutional objection to his criminal conviction for the first time in his third state habeas petition. *Id.* at 1218. The petition was denied "and the order denying the petition cited California cases concerning procedural default." *Id.* When Chaker later filed a federal habeas petition, the state

did not raise the issue of procedural default, either in the district court or on appeal. *Id.* at 1220. We therefore deemed it waived. *Id.* After declining to dismiss Chaker's petition *sua sponte*, we held that we were "not precluded from ruling on the merits of Chaker's claim due to his procedural default." However, because there was no state court decision on Chaker's constitutional claim, there was thus "no state decision to review to determine whether the decision was 'contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.' " We concluded that "[i]n such a circumstance, we review the district court's decision de novo without the deference usually accorded state courts under 28 U.S.C. § 2254(d)(1)." *Id.* at 1220-21.

This reasoning is consistent with AEDPA, which precludes us from granting a state habeas petition "with respect to any claim that was *adjudicated on the merits* in State court proceedings" unless the state's adjudication of the claim meets certain criteria. 28 U.S.C. § 2254(d) (emphasis added). We have held that "a state has 'adjudicated' a petitioner's constitutional claim 'on the merits' for purposes of § 2254(d) when it has decided the petitioner's right to post conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits." *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004). Where, as here, no state court considered Medley's claim on the merits, § 2254(d) is simply inapplicable.

The procedural posture we face here is essentially identical to that addressed in *Chaker*.[2] Because the state courts never

---

[2]The majority relies on *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002), but that case addressed a slightly different issue. *Pirtle* held that where a state court incorrectly concludes that a constitutional claim is barred on state procedural grounds, federal review of the claim is de novo, i.e., without regard to AEDPA deference. In this case, Medley's constitutional claim was not raised on direct appeal, and there is no basis for holding that the state court erred in determining that Medley's claim was procedurally barred.

adjudicated Medley's constitutional claim on the merits, but rejected it on procedural grounds, the better course is to decline to address Medley's procedurally-barred claim. *See Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998). However, if the majority insists on reaching the issue, AEDPA is inapplicable, and our precedent requires de novo review.

But the majority does not take the course set forth either in *Windham* or in *Chaker*. The majority mistakenly identifies the state trial court's resolution of a state law dispute over the jury instruction as the last reasoned decision of Medley's constitutional claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804-06 (1991). Of course, Medley failed to raise his constitutional issue to the state trial court, and so the court's decision on state law grounds did not adjudicate Medley's constitutional claim on the merits, or constitute "the last reasoned decision." *Id.* Although we look through to the last reasoned state court decision to address the petitioner's constitutional claim, *Riggs v. Fairman*, 399 F.3d 1179, 1182 (9th Cir. 2005), we do not "look through" to a state decision which does not address the constitutional claim. *Id.* If the constitutional issue was not raised to any state court that issued a reasoned decision, there is no state court determination addressing the petitioner's constitutional claim, and there is no adjudication on the merits for purposes of AEDPA.

In sum, the majority has taken a procedural route at odds with the facts, our case law, and AEDPA. The majority applies AEDPA deference to a state trial court's decision that instructing the jury that a "flare gun" was a "fire arm" was not an error of state law. Along the way, the majority brushes aside the exhaustion and procedural bar issues that caution us not to reach a constitutional claim never adjudicated on the merits by a state court.

B

The majority's second mistake is more substantive: a mis-application of AEDPA. Having erroneously concluded that

the state trial court adjudicated Medley's constitutional claim on the merits, the majority compounds its error by failing to defer to the state court's assumed constitutional decision in the manner required by § 2254(d). Under the majority's approach, we must read the state trial court as deciding the constitutional issue without giving a reason for denying Medley's due process claim. Under these circumstances, we treat the state court's silence on the issue as rejecting his due process claim. *See Himes*, 336 F.3d at 853; *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). Where the state court does not supply a reasoned decision, we must "perform an 'independent review of the record' to ascertain whether the state court decision was objectively unreasonable." *Himes*, 336 F.3d at 853 (quoting *Delgado*, 223 F.3d at 981-82); *see also Greene v. Lambert*, 288 F.3d 1081, 1089 (9th Cir. 2002).

We have indicated that this is a two-step process: First, we identify the clearly established Supreme Court precedent that makes the state court determination erroneous. Second, we determine whether the state court's failure to apply this Supreme Court precedent was not only erroneous, but objectively unreasonable. *See Delgado*, 223 F.3d at 981; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (holding that under AEDPA, the state court's application of clearly established law must be objectively unreasonable, not merely incorrect or erroneous).

The majority errs in the first step because it has not identified clearly established Supreme Court precedent that makes the state court determination erroneous. The majority concludes that the state court could not give the jury an interpretation of the term "firearm" in § 12022.53(c) but was required by Supreme Court precedent to give jury instructions that defined "firearm" by setting out the full language of § 12001(b).[3]

---

[3]California Penal Code § 12001(b) states: "As used in this title, 'firearm' means any device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion."

Maj. op. at 14377. The majority points to *Sandstrom v. Montana,* 442 U.S. 510 (1979), as clearly establishing this principle. Maj. op. at 14379. But *Sandstrom* held that a jury instruction deprives a defendant of his due process rights if it creates a conclusive presumption that the defendant had a specific state of mind. *See id.* at 524 (1979). *Sandstrom* does not clearly establish that a trial court's interpretation of an element of an offense violates the defendant's due process rights. *See Musladin,* 549 U.S. at ___, 127 S. Ct. 649, 654-55 (rejecting our grant of habeas relief based on extrapolation from Supreme Court cases not directly on point).

Nor does *United States v. Gaudin,* 515 U.S. 506 (1995), constitute clearly established precedent that makes the state court's determination erroneous. In *Gaudin,* the defendant was accused of making false statements to a federal agency under 18 U.S.C. § 1001, a statute requiring the government to prove the statements' materiality. *Id.* at 508-09. The federal judge told the jury that " '[t]he issue of materiality . . . is not submitted to you for your decision but rather is a matter for the decision of the court. You are instructed that the statements charged in the indictment are material statements.' " *Id.* at 508. On direct appeal, the Supreme Court held that the district court could not determine the element of "materiality" as a matter of law because "[t]he Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged." *Id.* at 511.

*Gaudin* is not contrary to this case, because here the jury did find Medley guilty of all the elements of § 12022.53(c), including use of a firearm as defined by the state court. *Gaudin* involved federal law, and therefore did not raise the question whether a state court's jury instructions interpreting the elements of an offense as a matter of state law violate constitutional principles. It is well established that federal courts must accept a state court's identification of the elements of a state criminal offense. *See Illinois v. Vitale,* 447 U.S. 410, 416

(1980) ("We accept, as we must, the Supreme Court of Illinois' identification of the elements of the offenses involved here."). Moreover, the Supreme Court has held that a trial court's instructions constitute an interpretation of state law that is binding on the federal courts. *See Robinson v. California*, 370 U.S. 660, 666 (1962) ("The instructions of the trial court, implicitly approved on appeal, amount[ ] to 'a ruling on a question of state law that is as binding on us as though the precise words had been written' into the statute. 'We can only take the statute as the state courts read it.' " (quoting *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949))); *see also City of Houston v. Hill*, 482 U.S. 451, 470 (1987). Read in light of these precedents, there is no inconsistency with *Gaudin*, because the state trial court's instructions merely defined the elements of the offense, which then went to the jury.[4]

Indeed, a post-*Gaudin* case reached just this conclusion. In *Stanton v. Benzler*, 146 F.3d 726 (9th Cir. 1998), we held that no due process violation arose from a state trial court's instruction to the jury defining "poison" in a state criminal statute as including "arsenic trioxide." *Id.* at 727-28. We stated: "This state-law determination—that arsenic trioxide is a poison as a matter of law and is not an element of the offense to be decided by the jury—is not open to challenge on habeas review." *Id.* at 728. As *Stanton* confirms, *Gaudin* did

---

[4]The majority contends that the elements of the offense included the "sub-elements" of California Penal Code § 12001(b). But this section does not create new elements of the California Penal Code § 12022.53(c) offense; rather, it provides the definition of one element of the offense, "firearm," as a matter of state law. Even if the trial judge erred in concluding that a flare gun met this definition, and therefore was a firearm as a matter of state law, such a state law error cannot be the basis of habeas relief. *See Estelle*, 502 U.S. at 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Moreover, the majority's new rule that the statutory definition of a term in a criminal offense statute constitutes "sub-elements" of that offense cannot be found in *Gaudin* or any other clearly established Supreme Court precedent.

not clearly establish the principle that state trial courts may not define key terms in jury instructions.[5] Thus, the majority has pointed to no established Supreme Court precedent that makes the state court's determination erroneous.

## C

Because the majority is unable to identify any Supreme Court precedent in clear contradiction to this case, then *a fortiori*, the majority cannot hold that the state court's determination was objectively unreasonable. The state court could have reasonably viewed the trial court's jury instruction as an interpretation of California Penal Code § 12022.53(c). Trial courts often give juries interpretations of key words in criminal statutes, and such interpretations may be affirmed on appeal and become binding state-law precedent. *See, e.g., People v. Dimitrov*, 39 Cal. Rptr. 2d 257, 260 (Cal. Ct. App. 1995) (upholding trial court's definition of "destructive device" as including "pipe bomb"); *People v. Runnion*, 36 Cal. Rptr. 2d 203, 206 n.3 (Cal. Ct. App. 1994) (upholding trial court's definition of "firearm" as including "handgun").[6] Reading the trial court's interpretation of state law as if " 'the precise words' " of the jury instruction had been written into § 12022.53(c), *Robinson*, 370 U.S. at 666 (quoting *Terminiello*, 337 U.S. at 4), this statute required the jury to determine

---

[5]It is true, as the majority points out, that in *Stanton* the trial court relied on unrelated state statutes defining "poison" as including arsenic trioxide. Maj. op. at 14381. But it's not clear why this makes a difference. Under the logic of the majority's opinion, the *Stanton* trial court infringed the defendant's due process rights by instructing the jury that an element of the offense (poison) was established by the evidence as a matter of law.

[6]The majority distinguishes *Runnion* essentially on the ground that "handgun" in *Runnion* meets the statutory definition of "firearm" better than "flare gun" meets that definition. Maj. op. at 14380. But again, these distinctions are irrelevant to the constitutional issue. If a defendant's due process rights are violated by instructions interpreting a key term, the comparative accuracy of the trial courts' legal interpretation goes only to whether the jury instruction error was harmless.

that the defendant had personally and intentionally discharged a flare gun. The majority does not contend that the statute, so read, violates the Constitution, and there is no clearly established Supreme Court precedent precluding a state from interpreting the statute in such a way, i.e., defining "firearm" to include a flare gun.[7] Relying on this interpretation, the state court could reasonably conclude that the trial court's instruction did not infringe on Medley's due process rights. Although the majority did not expressly reach the second step of AEDPA review, there is no basis for ruling that such a conclusion by the state court would be objectively unreasonable.

II

All this is not to say that the majority's view is unreasonable. A reasonable court could interpret the trial court's jury instruction as, in effect, taking an element of the offense away from the jury and determining it as a matter of law. But the state court's interpretation of the jury instructions, as explained above, was also reasonable, and under AEDPA we must defer to the state court's determination unless it is objectively unreasonable. In light of the lack of clear guidance from the Supreme Court, deference is required here. *See*, *e.g., Musladin*, 549 U.S. at ___, 127 S. Ct. at 654 (holding that where there is a "lack of holdings" from the Supreme Court on an issue, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.' " (quoting 28 U.S.C. § 2254(d)(1)).

If we were to review Medley's claim de novo, as our precedent dictates, then the majority's application of *Sandstrom* and *Gaudin* would be on firmer ground. Since, however, the question is whether the state has been objectively unreason-

---

[7]Medley did not raise the question of whether the state court's jury instruction constituted an error under *Bouie v. City of Columbia*, 378 U.S. 347 (1964), in either state or federal court, and therefore such a claim is both procedurally defaulted and waived.

able, I must dissent from the majority's decision on the jury instruction issue. I concur, however, in the majority's holding regarding Medley's claim of ineffective assistance of counsel.