**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HERCULANO DELGADILLO,
            *Petitioner-Appellant,*

v.

JEANNE S. WOODFORD,
            *Respondent-Appellee.*

No. 07-55089

D.C. No.
CV-03-01501-DMS

OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
December 3, 2007—Pasadena, California

Filed June 3, 2008

Before: David R. Thompson, Kim McLane Wardlaw, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

## COUNSEL

Vivian A. Fu, San Francisco, California, for the petitioner-appellant.

Meagan J. Beale, Deputy Attorney General, Office of the Attorney General of the State of California, San Diego, California, for the respondent-appellee.

## OPINION

IKUTA, Circuit Judge:

This appeal requires us to consider whether for purposes of our review under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d)(1), a state habeas court's decision to apply *Crawford v. Washington*, 541 U.S. 36 (2004), retroactively to uphold a defendant's sentence is an unreasonable application of Supreme Court precedent. Although *Whorton v. Bockting*, 127 S. Ct. 1173, 1177 (2007), held that *Crawford* is not retroactively applicable in federal habeas proceedings, *Danforth v. Minnesota*, 128 S. Ct. 1029, 1040-41 (2008), clarified that the rule of nonretroactivity for federal habeas proceedings is not binding on state habeas courts. In light of *Danforth*, we hold that the state habeas court's decision to apply *Crawford* was reasonable. We also hold that we must defer to the state habeas court's application of *Crawford* to the facts of this case. Therefore, we affirm the district court's denial of Delgadillo's petition for a writ of habeas corpus.

I

On September 22, 2000, Herculano Delgadillo was convicted in California state court of multiple counts of threatening, assaulting, and inflicting corporal injury on his then girlfriend, now wife, Rosa Ramirez.

On May 19, 2000, Ramirez called 911 and reported that she had been beaten by Delgadillo. After meeting Officer Vasquez at the police station, Ramirez told him that she had

just been punched and choked by Delgadillo. She also recounted several prior incidents where Delgadillo had threatened and beaten her. The following day, Ramirez went to White Memorial Hospital for treatment. She told a nurse that her boyfriend was responsible for her injuries, and that he had also assaulted her one or two weeks prior. On May 24th, Detective Behrendt of the San Diego Police Department interviewed Ramirez. Ramirez repeated the information she had previously provided to Officer Vasquez about the May 19th incident, and described two other assaults by Delgadillo, including an incident where he slammed a door on her head and another time when Delgadillo had choked her.

Police arrested Delgadillo on May 27, 2000. Several days afterwards, Ramirez visited Delgadillo in jail. She then informed Detective Behrendt that she did not wish to pursue charges. Ramirez and Delgadillo married before his trial.

Delgadillo was charged with two counts of inflicting corporal injury on a cohabitant, four counts of assault with a deadly weapon or force likely to produce great bodily injury, and two counts of making a terrorist threat. *See* CAL. PENAL CODE §§ 273.5, 245(a)(1), 422.

At the preliminary hearing on June 14, 2000, Ramirez appeared both as a witness for the state and as a witness for the defense. Officer Vasquez, Detective Behrendt, and several of Ramirez's coworkers also testified for the state. Ramirez denied telling the police, her coworkers, or the nurse that Delgadillo abused her. She also testified that she had hit Delgadillo first on the night of May 19th. Delgadillo had an opportunity to cross-examine her and the other witnesses.

Ramirez did not appear at Delgadillo's trial. The court declared her unavailable and allowed the state to read Ramirez's testimony at the preliminary hearing to the jury. Officer Vasquez, Detective Behrendt, and Ramirez's coworkers, including Maha Dahglas, who had not testified at

the preliminary hearing, were witnesses for the state. The police officers, the nurse, and Ramirez's coworkers testified regarding Ramirez's prior inconsistent statements, including Ramirez's statements that Delgadillo had assaulted her. Coworkers also testified that they saw Ramirez with various injuries between November 1999 and May 2000, including bruising around her leg, throat, and eyes. Delgadillo's trial counsel did not object to the admissibility of Ramirez's hearsay statements at trial.

On September 22, 2000, Delgadillo was convicted on all counts except for one of the terrorist threat counts.

Delgadillo did not raise any Confrontation Clause claims on direct appeal. The state appellate court denied his appeal in a reasoned opinion on June 28, 2002, and the state supreme court summarily denied his appeal on September 11, 2002.

Delgadillo filed his federal habeas petition on July 28, 2003, claiming that Ramirez's preliminary hearing testimony was admitted at trial in violation of state evidentiary rules, and that there was insufficient evidence to support the jury verdicts. While the federal petition was pending, Delgadillo filed a petition for writ of habeas corpus in the state superior court on September 3, 2003, alleging that trial counsel was ineffective in failing to object to the admissibility of Ramirez's prior inconsistent statements. The superior court denied the petition, as did the California appellate court. With respect to Delgadillo's ineffective assistance claim, the California appellate court noted that it "ha[d] already determined that [Ramirez's] prior inconsistent statements were properly admitted and an objection would have been fruitless." Moreover, the court held there was no prejudice. The California Supreme Court summarily denied Delgadillo's appeal of this decision.

After the Supreme Court decided *Crawford* on March 8, 2004, a federal magistrate judge considering Delgadillo's

pending federal habeas petition determined that Delgadillo had raised Sixth Amendment claims, namely, that the introduction of Ramirez's out-of-court statements at trial violated Delgadillo's Confrontation Clause rights. Because the state court had not previously addressed this issue, it was unexhausted. The magistrate judge stayed Delgadillo's habeas petition and held it in abeyance pending Delgadillo's exhaustion of his Confrontation Clause claims in state court. Delgadillo then filed a second state petition for writ of habeas corpus in the state appellate court, raising his Confrontation Clause claims.

On March 21, 2005, the California Court of Appeal rejected Delgadillo's Confrontation Clause claims, ruling that Delgadillo had not demonstrated that his Sixth Amendment rights were violated under *Crawford*. The California Supreme Court denied Delgadillo's petition without opinion.

Having exhausted his state remedies, Delgadillo returned to the federal district court, which denied Delgadillo's habeas petition on December 15, 2006. Pursuant to 28 U.S.C. § 2253(c), the district court certified five claims for appeal. Delgadillo also raises 11 uncertified issues.

II

On appeal, Delgadillo raises the same claim he raised to the state habeas court, that his Confrontation Clause rights were violated by the admission at trial of Ramirez's out-of-court statements to Detective Behrendt and Ramirez's co-workers. Delgadillo also contends that, absent these inadmissible statements, there was insufficient evidence to support one of his convictions for assaulting Ramirez. In addition, Delgadillo claims his Sixth Amendment rights to effective assistance of counsel were violated by trial counsel's failure to object to the admission of hearsay testimony from Detective Behrendt and Ramirez's co-workers.

A

**[1]** We first address Delgadillo's Confrontation Clause claims. Although the state habeas court applied *Crawford* to his claims, Delgadillo contends that we should apply *Ohio v. Roberts*, 448 U.S. 56 (1980), which was the applicable Supreme Court precedent at the time Delgadillo's conviction became final. *Ohio v. Roberts* held that if a hearsay declarant is not present for cross-examination at trial, there must normally be a showing that the declarant is unavailable, and even then the hearsay statement is admissible "only if it bears adequate 'indicia of reliability.' " 448 U.S. at 66. The Supreme Court overruled *Ohio v. Roberts* in *Crawford*, after Delgadillo's conviction became final. *Crawford* distinguished testimonial from nontestimonial statements, "and held that '[t]estimonial statements of witnesses absent from trial' are admissible 'only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the witness].' " *Whorton*, 127 S. Ct. at 1179 (alterations in original) (quoting *Crawford*, 541 U.S. at 59). Nontestimonial statements do not raise Confrontation Clause concerns. *Whorton*, 127 S. Ct. at 1183 (explaining *Crawford*).

**[2]** After *Crawford* was decided, the Supreme Court determined in *Whorton* that *Crawford* constituted a new constitutional rule of criminal procedure that was not retroactively applicable on federal habeas review. *Whorton*, 127 S. Ct. at 1184. The Court based this conclusion on the framework set forth in *Teague v. Lane*, 489 U.S. 288 (1989), and its progeny. In *Teague*, the Supreme Court first enunciated the rule that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague*, 489 U.S. at 310.

Delgadillo argues that we must consider his claims under *Ohio v. Roberts*, because *Crawford* does not apply retroactively on federal habeas review. Accordingly, Delgadillo chal-

lenges the admission of Ramirez's out-of-court statements as violating the criteria for admissibility set forth in *Ohio v. Roberts*, arguing that Ramirez's statements do not bear "adequate 'indicia of reliability.' " 448 U.S. at 66. Because *Crawford* rejected this framework for analyzing Confrontation Clause violations, *see Whorton*, 127 S. Ct. at 1183, such arguments are irrelevant unless *Ohio v. Roberts* applies to Delgadillo's claims.

B

**[3]** Before reaching the merits of Delgadillo's Confrontation Clause claims, however, we must consider the applicability of AEDPA, 28 U.S.C. § 2254, which establishes a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (internal quotation marks omitted). Under AEDPA, we must defer to the state court's resolution of federal claims unless its determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also, e.g.*, *Himes v. Thompson*, 336 F.3d 848, 852 (9th Cir. 2003). " '[C]learly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Only if the state court's decision does not meet the criteria set forth in § 2254(d)(1) do we conduct a de novo review of a habeas petitioner's claims. *See Panetti v. Quarterman*, 127 S. Ct. 2842, 2855 (2007) (holding that where the state court's application of Supreme Court precedent was unreasonable, the federal court may review petitioner's claim "unencumbered by the deference AEDPA normally requires"); *see also Frantz v. Hazey*, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must

decide the habeas petition by considering de novo the constitutional issues raised.").

**[4]** The relevant state court determination for purposes of AEDPA review is the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804-06 (1991); *see Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007) (en banc). Here, the March 21, 2005 decision of the state appellate court denying Delgadillo's second state habeas petition is the last reasoned decision on Delgadillo's Confrontation Clause claims. Therefore, Delgadillo's appeal requires us to consider first whether the state habeas court's application of *Crawford* to Delgadillo's Confrontation Clause claims is contrary to or an unreasonable application of Supreme Court precedent.

The Supreme Court answered this question in the negative in *Danforth*, which was decided while this appeal was pending. In *Danforth*, the Supreme Court addressed the question whether a state habeas court is constrained by a federal court determination that, under *Teague*, a new constitutional rule of criminal procedure is not retroactively applicable on collateral review. The petitioner in *Danforth* argued on appeal that his Confrontation Clause rights had been violated by the admission at trial of a videotaped interview. *Danforth*, 128 S. Ct. at 1033. The state appellate court upheld the admissibility of the videotape under *Ohio v. Roberts*. *Id.* After petitioner's conviction became final, the Court announced the new rule in *Crawford*, and the petitioner thereupon filed a state postconviction petition asking for the benefit of *Crawford*. *Id.* The Minnesota Supreme Court held that *Crawford* was a nonretroactive new rule of criminal procedure, and that the state habeas courts were thereby bound by *Teague* not to apply *Crawford* retroactively to the petitioner's habeas petition. *Id.* at 1033-34.

The Supreme Court agreed that *Crawford* is a nonretroactive new rule of criminal procedure under *Teague*, as was made clear in the Court's intervening decision in *Whorton*. *Id.* at 1034. However, the Court disagreed with the Minnesota

Supreme Court's further holding that *Teague* prohibits state courts from retroactively applying *Crawford* on collateral review, *id.* at 1042, and instead clarified why the *Teague* non-retroactivity rule constrains only federal courts. First, the Court explained that it is not empowered to create a nonretro-active constitutional right. *Id.* at 1035; *see also id.* at 1044. In deciding that a new constitutional rule of criminal procedure is nonretroactive on collateral review, the Court is therefore assessing only "whether a violation of the right that occurred prior to the announcement of the new rule will entitle a criminal defendant to the relief sought." *Id.* at 1035. This authority —the Court's authority to limit the relief afforded by a new constitutional rule of criminal procedure—is based on the Court's federal habeas authority. *Id.* at 1039-1040 ("*Teague*'s general rule of nonretroactivity was an exercise of this Court's power to interpret the federal habeas statute."). The Court interpreted the habeas statute's directive to dispose of habeas petitions "as law and justice require," 28 U.S.C. § 2243, as authorizing the Court to "adjust the scope of the writ in accordance with equitable and prudential consider-ations." *Id.* at 1040. *Teague* is an exercise of this prudential and equitable authority "to achieve the goals of federal habeas while minimizing federal intrusion into state criminal pro-ceedings." *Id.* at 1041. Given that *Teague* "is based on statu-tory authority that extends only to federal courts applying a federal statute, it cannot be read as imposing a binding obliga-tion on state courts." *Id.* at 1040.

[5] Because "*Teague* speaks only to the context of federal habeas," *id.* at 1041, the Supreme Court held that the Minne-sota Supreme Court erred in holding that state courts were constrained by *Teague.* According to the Court, "the *Teague* decision limits the kinds of constitutional violations that will entitle an individual to relief on federal habeas, but does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed 'nonretroactive' under *Teague.*" *Id.* at 1042.

**[6]** In light of *Danforth*'s holding that *Teague* is inapplicable to a state habeas court's retroactivity decisions, and more specifically, that a state habeas court may apply *Crawford* retroactively on collateral review, the state habeas court here did not err in applying *Crawford* to Danforth's habeas petition. Under AEDPA, we must defer to the state habeas court's determination that the clearly established federal law at issue here is *Crawford*, rather than *Ohio v. Roberts*.

## III

The state court did not err in electing to apply *Crawford*. Therefore, *Crawford* is the "clearly established Federal law" for purposes of our AEDPA review. *See* 28 U.S.C. § 2254(d)(1). Under AEDPA, we must next determine whether the state court unreasonably applied *Crawford*, or reached a decision contrary to *Crawford*, in holding that the admission of Ramirez's statements to Detective Behrendt and to her coworkers at trial did not violate Delgadillo's Confrontation Clause rights. *See id.* § 2254(d)(1).

**[7]** In examining Ramirez's statements to Detective Behrendt, the state habeas court concluded that the statements were "testimonial evidence and were admissible at trial because she was unavailable and Delgadillo did cross-examine her at the preliminary hearing." This determination was consistent with *Crawford*. *Crawford* held that a statement "knowingly given in response to structured police questioning" is a testimonial statement under "any conceivable definition." 541 U.S. at 53 n.4. *Crawford* further held that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. at 68.

**[8]** With respect to Ramirez's statements to her coworkers, the state court denied Delgadillo's Confrontation Clause claim without a detailed analysis.[1] In context, the state court

---

[1]The court stated, "Rosa's statements to others were admitted at trial largely without objection and Delgadillo does not specify which specific

implicitly concluded that Ramirez's statements to her coworkers were nontestimonial.**²** This conclusion is also not contrary to, nor an unreasonable application of, *Crawford*. Although *Crawford* did not define "testimonial" or "nontestimonial," it made clear that the Confrontation Clause was concerned with "testimony," which "is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact," and noted that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." 541 U.S. at 51 (first alteration in original) (internal quotation marks omitted). In light of this definition of "testimony," and *Crawford*'s holding that the admission of nontestimonial statements does not raise Confrontation Clause concerns, *see Whorton*, 127 S. Ct. at 1183, the state court's implicit conclusion that Ramirez's remarks to her coworkers did not implicate Delgadillo's Sixth Amendment rights of confrontation was not contrary to, nor an unreasonable application of *Crawford*, *see* 28 U.S.C. § 2254(d)(1).

**[9]** Therefore, we defer to the state habeas court's determination that the admission at trial of testimony from Detective Behrendt and Ramirez's coworkers did not violate Delgadillo's Confrontation Clause rights. Accordingly, we must also reject Delgadillo's claim that absent this testimony there was insufficient evidence to support one of his convictions.

Because Delgadillo fails to "satisfy the AEDPA standard of review," *see Horn v. Banks*, 536 U.S. 266, 272 (2002), we

---

statements are objectionable. Several of Rosa's coworkers testified at the preliminary hearing and were also thoroughly cross-examined about Rosa's statements they related that incriminated Delgadillo."

**²**If Ramirez's statements to coworkers were testimonial, they would be admissible to the same extent as her statements to Detective Behrendt because Ramirez was unavailable and had been previously subject to cross-examination by Delgadillo.

may not undertake a de novo review of his Confrontation Clause claims. *See Panetti*, 127 S. Ct. at 2855. Therefore, we do not reach Delgadillo's argument that we should review his claims de novo under *Ohio v. Roberts*.**[3]**

**[10]** We note, however, that even if we were free to conduct de novo review, Delgadillo could not have required us to consider his claims under *Ohio v. Roberts* rather than *Crawford*. The Supreme Court has made clear that the purpose of the *Teague* non-retroactivity rule is to protect state interests. The rule is "motivated by a respect for the States' strong interest in the finality of criminal convictions, and the recognition that a State should not be penalized for relying on 'the constitutional standards that prevailed at the time the original proceedings took place.' " *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (quoting *Teague*, 489 U.S. at 306). For this reason, in federal habeas proceeding, the state "can waive a *Teague* defense, during the course of litigation, by expressly choosing not to rely on it." *Danforth*, 128 S. Ct. at 1046; *see also Lockhart*, 506 U.S. at 372. A habeas petitioner, on the other hand, may not raise *Teague* to bar the application of a new rule. *See Lockhart*, 506 U.S. at 372-73. Thus, the state can get the benefit of a new rule of criminal procedure by waiving *Teague* in a federal habeas proceeding just as the state habeas courts can elect to apply a non-retroactive new rule when considering a state habeas petitioner's claims. *Danforth*, 128 S. Ct. at 1046. Accordingly, Delgadillo could not have required a federal habeas court to apply *Ohio v. Roberts* to his Confrontation Clause claims over the state's objection. Moreover, even if *Ohio v. Roberts* were applicable to Delgadillo's Confrontation Clause claims, it is far from clear that

---

**[3]**As noted *supra* at 6280, Delgadillo's central argument on appeal is that the testimony of Detective Behrendt and Ramirez's coworkers was inadmissible under *Ohio v. Roberts* because it did not fall into a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness," as required under that case. 448 U.S. at 66. Because the state court was not required to apply *Ohio v. Roberts*, we reject these arguments.

Delgadillo would have prevailed. The district court analyzed Delgadillo's claims that certain nontestimonial statements violated his Confrontation Clause rights under *Ohio v. Roberts*, and nevertheless denied his habeas petition.

IV

Finally, Delgadillo argues that his Sixth Amendment right to effective assistance of counsel was violated because his trial counsel failed to object to the admission at trial of hearsay testimony from Detective Behrendt and Ramirez's coworkers. The testimony at issue consisted of out-of-court statements by Ramirez that were inconsistent with Ramirez's statements at the preliminary hearing. Ramirez's statements at the preliminary hearing had been read to the jury at trial. Delgadillo argues that the hearsay testimony was inadmissible under California law. The state appellate court rejected this ineffective assistance of counsel argument in its January 12, 2004 decision.

**[11]** Under AEDPA, we must determine whether the state appellate court's decision is contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See* § 2254(d)(1). To establish constitutionally ineffective assistance of counsel under *Strickland*, a petitioner must show that (1) "counsel's performance was deficient," and (2) counsel's "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To show that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, the petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

**[12]** A trial counsel's failure to object to evidence which is inadmissible under state law can constitute deficient performance under *Strickland*. *See Rupe v. Wood*, 93 F.3d 1434,

1444-45 (9th Cir. 1996). Degadillo argues that the hearsay testimony at issue was inadmissible under state law, and argues in the alternative that even if the testimony was admissible in the form of a preliminary hearing transcript, counsel was deficient in failing to object to the live testimony.

[13] Delgadillo first argues that the hearsay evidence was not admissible in any form at trial because the evidence was never "properly admitted" at the preliminary hearing. *See* CAL. EVID. CODE § 1294(a). We disagree. California Evidence Code § 1294 provides:

> (a) The following evidence of prior inconsistent statements of a witness properly admitted in a preliminary hearing or trial of the same criminal matter pursuant to Section 1235 is not made inadmissible by the hearsay rule if the witness is unavailable and former testimony of the witness is admitted pursuant to Section 1291:
>
> > (1) A videotaped statement introduced at a preliminary hearing or prior proceeding concerning the same criminal matter.
> >
> > (2) A transcript, containing the statements, of the preliminary hearing or prior proceeding concerning the same criminal matter.
>
> (b) The party against whom the prior inconsistent statements are offered, at his or her option, may examine or cross-examine any person who testified at the preliminary hearing or prior proceeding as to the prior inconsistent statements of the witness.

Prior inconsistent statements are "properly admitted" under § 1235 "provided the witness [who made the prior inconsistent statement] is given the opportunity to explain or deny the statement or the witness has not been excused from giving

further testimony in the action." *People v. Avila*, 133 P.3d 1076, 1138 (Cal. 2006). In this case, Ramirez testified at the preliminary hearing and had the opportunity to explain or deny the testimony from other witnesses about her prior inconsistent statements. The inconsistent statements were therefore properly admitted pursuant to § 1235. Delgadillo's argument that the statements were not properly admitted rests solely on the fact that the prosecutor did not cite to California Evidence Code § 1235, relying instead on Proposition 115. It is irrelevant, however, what ground the prosecutor cited. *See, e.g.*, *People v. Martinez*, 113 Cal. App. 4th 400, 408 (Ct. App. 2003) ("When a trial court erroneously relies on one hearsay exception to admit evidence that otherwise would have been admissible under a different exception, it cannot be said that the evidence was admitted in error.").

**[14]** Delgadillo next argues that because the inconsistent statements were only admissible as part of the preliminary hearing transcript, not as live testimony, counsel was constitutionally deficient in failing to object to the live testimony. We cannot say that trial counsel's decision to allow witnesses to testify to Ramirez's prior inconsistent statements on the stand, in lieu of having the statements admitted in the form of the preliminary hearing transcript, was an objectively unreasonable trial strategy. The courts have long-recognized the value "of a personal examination and cross-examination of the witness," and of "compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242-43 (1895). Moreover, California Evidence Code § 1294(b) contemplates that trial counsel may prefer to have the witness take the stand insofar as it provides that "[t]he party against whom the prior inconsistent statements are offered, at his or her option, may examine or cross-examine any person who testified at the preliminary hearing or prior proceeding as to the prior inconsistent statements of the witness." *See Martinez*, 113 Cal. App. 4th at 408

(quoting CAL. EVID. CODE § 1294). Delgadillo has therefore failed to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted).[4]

**[15]** Because the preliminary hearing evidence of Ramirez's prior inconsistent statements was admissible at Delgadillo's trial in transcript form, and because trial counsel's decision to instead permit the evidence to be presented on the stand did not fall below "an objective standard of reasonableness," *id.* at 688, we conclude that the state court's determination that Delgadillo was not deprived of effective assistance of counsel was not contrary to, nor an unreasonable application of, *Strickland*.[5]

V

Delgadillo also raises eleven uncertified issues. When a brief includes uncertified issues, we may treat it as a request to expand the scope of the certificate of appealability. *Solis v. Garcia*, 219 F.3d 922, 926 (9th Cir. 2000). Nine of Delgadillo's claims substantively rely on Delgadillo's argument that his Confrontation Clause arguments should have been reviewed under *Ohio v. Roberts*, an argument we have already

---

[4]Delgadillo argues for the first time in his reply brief that he was prejudiced by counsel's failure to object to the admission of hearsay testimony from Maha Dahglas, a coworker who did not testify at the preliminary hearing. Arguments raised for the first time in petitioner's reply brief are deemed waived. *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1093 n.3 (9th Cir. 2007). Moreover, Delgadillo's argument fails on the merits, because the testimony is largely cumulative and Delgadillo fails to establish that but for the admission of that testimony "there is a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

[5]Because we determine that the performance of Delgadillo's trial counsel was not deficient under *Strickland*, we do not reach the state appellate court's alternative holding that Delgadillo suffered no prejudice.

rejected. The tenth claim alleges that Delgadillo's trial counsel provided ineffective assistance of counsel for failing to object to the introduction of preliminary hearing evidence of Ramirez's prior inconsistent statements, and that appellate counsel was ineffective for failing to raise this issue on appeal. We have already rejected this argument as well. Finally, Delgadillo claims that his trial counsel was unconstitutionally ineffective in failing to object to the admission of particular statements Ramirez made to the 911 operator. In light of the strong evidence supporting the counts against Delgadillo, Delgadillo has failed to demonstrate prejudice. *Strickland*, 466 U.S. at 687, 694, 697. Because Delgadillo has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), we deny his request for a certificate of appealability.

**AFFIRMED**