**Ismael Antonio SANTA CRUZ, Petitioner,**

v.

**Larry SMALL, Warden, Respondent.**

**Case No. EDCV 08–01487 SGL (AN).**

United States District Court,
C.D. California,
Eastern Division.

Dec. 31, 2008.

Ismael Antonio Santa Cruz, Calipatria, CA, pro se.

Christine Marie Levingston Bergman, CAAG, San Diego, CA, for Respondent.

ORDER APPROVING AND ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

STEPHEN G. LARSON, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the file, including the Magistrate Judge's Report and Recommendation ("R & R") and Petitioner's Objections thereto, de novo. IT IS ORDERED that:

1. The Objections are overruled and the R & R is approved and adopted.

2. Judgment shall be entered denying the Petition and dismissing this action with prejudice.

3. All motions are denied as moot and terminated.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve a copy of this Order and the Judgment on all counsel or parties of record.

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

ARTHUR NAKAZATO, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Stephen G. Larson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California. For the reasons set forth below, the Magistrate Judge recommends that the Court deny the Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition") and dismiss this action with prejudice.

I. BACKGROUND

A. State Court Proceedings

On April 7, 2007, Ismael Antonio Santa Cruz ("Petitioner") was convicted by jury trial in the California Superior Court for the County of Riverside (Case No. RIF132125) of sodomy and aggravated sodomy of a child under the age of 14 in violation of California Penal Code[1] sections 286(c)(1) and 269(a)(3). (Lodgment ("LD") 1 at 149–50, 159.) On June 1, 2007, Petitioner was sentenced to 15 years to life plus 6 years in state prison. (LD 1 at 166–67, 183–86.)

Petitioner sought direct review of his conviction by filing habeas petitions with both of the state appellate courts. (LD 3, 7; Case Nos. E043335, S162828.) Both petitions were denied in the state courts. (LD 6, 8.) Petitioner did not seek collateral review in the state courts.

B. Pending Proceedings

On October 23, 2008, Petitioner filed his pending Petition that raises one insufficient evidence claim, which is incorporated by reference from the copy of the attached opening brief that he filed with the state

1. All further statutory references are to the California Penal Code, unless otherwise stated.

court of appeal on direct review. (Pet. 5, Ex. A.) Respondent filed an Answer, arguing the claim fails on the merits. (Answer 6–9.) Petitioner has filed a Traverse and the matter now stands submitted.

## II. DISCUSSION

### A. Standard of Review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, a federal court may not grant a state prisoner's application for habeas relief for any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d); *Woodford v. Visciotti,* 537 U.S. 19, 24–26, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002); *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); *Williams v. Taylor,* 529 U.S. 362, 405–09, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

"Clearly established Federal law" refers to the governing legal principle or principles established by the Supreme Court's holdings, not dicta, at the time the state court renders its decision. *Lockyer v. Andrade,* 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); *Carey v. Musladin,* 549 U.S. 70, 74, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." *Plumlee v. Masto,* 512 F.3d 1204, 1210 (9th Cir.2008) (en banc). Consequently, where no decision of the United States Supreme Court "squarely addresses" an issue or provides a "categorical answer" to the question before the state court, § 2254(d)(1) bars relief because the state court's adjudication of the issue cannot be contrary to, or an unreasonable application of, clearly established federal law. *Moses v. Payne,* 543 F.3d 1090, 1098 (9th Cir. 2008); *see also Wright v. Van Patten,* 552 U.S. 120, 128 S.Ct. 743, 746, 169 L.Ed.2d 583 (2008).

A state court decision is "contrary to" clearly established Federal law if it: (1) applies a rule that contradicts governing Supreme Court law; or (2) "confronts a set of facts ... materially indistinguishable" from a decision of the Supreme Court but reaches a different result. *See Packer,* 537 U.S. at 9, 123 S.Ct. 362 (citation omitted); *Williams,* 529 U.S. at 405–06, 120 S.Ct. 1495. The Supreme Court has emphasized that citation of its cases is not required so long as "neither the reasoning nor the result of the state-court decision contradicts (its governing decisions)." *Packer,* 537 U.S. at 8, 123 S.Ct. 362; *see also Bell v. Cone,* 543 U.S. 447, 455, 125 S.Ct. 847, 160 L.Ed.2d 881 (2005). What matters is whether the last reasoned decision reached by the state court was contrary to controlling Federal law, not the intricacies of the analysis. *Hernandez v. Small,* 282 F.3d 1132, 1140 (9th Cir.2002).

A state court decision involves an "unreasonable application" of clearly established Supreme Court precedent if the state court: (1) identifies the correct governing Supreme Court law but unreasonably applies the law to the facts; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407, 120 S.Ct. 1495. To find that a state court has unreasonably applied Supreme Court precedent, the state court decision must have been "ob-

jectively unreasonable, not just incorrect or erroneous." *Andrade,* 538 U.S. at 65, 123 S.Ct. 1166; *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Clark v. Murphy,* 331 F.3d 1062, 1068 (9th Cir.2003).

■ In applying § 2254(d)'s standards, this Court looks to the last reasoned state court decision. *Delgadillo v. Woodford,* 527 F.3d 919, 925 (9th Cir.2008); *Medley v. Runnels,* 506 F.3d 857, 862 (9th Cir. 2007). Where no reasoned opinion exists because, for example, the state courts rejected a claim without comment, this Court must conduct an independent review to determine whether the state courts' unexplained decisions were contrary to, or involved an unreasonable application of, "clearly established" Supreme Court precedent. *See Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." § 2254(e)(1); *Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Moses,* 543 F.3d at 1093 n. 1; *Lara v. Ryan,* 455 F.3d 1080, 1082 (9th Cir.2006).

■ AEDPA's deferential standard applies to the sole claim in the pending Petition. The California Court of Appeal rejected the claim on the merits in a reasoned decision on direct appeal, and the California Supreme Court denied the claim without comment. (LD 6, 8.) While the state high court's denial was silent, it still constitutes a denial "on the merits" for purposes of federal habeas review, *Hunter v. Aispuro,* 982 F.2d 344, 348 (9th Cir.1992), and Petitioner's claim is deemed to have been rejected for the same reasons given in the last reasoned decision, which in this case was the court of appeal's opinion. *Ylst v. Nunnemaker,*

501 U.S. 797, 805, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

**B. Facts Established at Trial**

In his sole claim, Petitioner contends there was insufficient evidence to support his aggravated sodomy of a child under the age of 14 conviction pursuant to section 269(a)(3). (Pet. 5, Ex. A at 1–13; Traverse 2–3.) The Court must conduct an independent review of the record when a habeas petitioner challenges the sufficiency of the evidence. *Jones v. Wood,* 114 F.3d 1002, 1008 (9th Cir.1997). After a careful and exhaustive review of the record, the Court finds the California Court of Appeal's summary of the pertinent trial facts is based upon an accurate, reasonable determination of the evidence, and thus adopts it as follows:

Marlon C. shared his bedroom with [Petitioner], a family friend approximately the same age as he. In August 2006, Marlon came home and attempted to open his bedroom door. The door, which was normally unlocked, was locked, so Marlon opened the door with his key. He witnessed then 22–year–old [Petitioner], and John Doe, Marlon's seven-year-old brother, engaged in a sexual act. Marlon testified that they were laying on their sides with [Petitioner] in back of Doe inserting his penis into Doe's anus. [Petitioner] had one of his hands on his own penis and the other around Doe's neck. Doe appeared calm.

After he walked in, [Petitioner] separated himself from Doe. Marlon grabbed Doe and led him out of the room. Marlon thereafter kicked [Petitioner] out of the house.

Approximately two weeks later, the police were called regarding the incident. Officer Dane Wilkinson testified that Doe said he was not scared during the incident; however, Doe said that he

was angry. Officer Edgar Castaneda contacted [Petitioner]. [Petitioner] admitted that he had touched Doe's penis and touched his penis to Doe's buttocks. [Petitioner] told Castaneda he did so in order to exact revenge for Marlon's sodomization of him when he was eight years old. [Petitioner] admitted that Marlon had seen them in the act; however, he denied actually putting his penis inside Doe's anus. Officer Andy Bryant observed a forensic interview with Doe conducted by a social worker. The parties stipulated to the admission of a transcript of that recorded interview.

During the interview, Doe indicated that while he was sleeping in Marlon's room one day, [Petitioner] came into the room, jumped over his back, and pulled his underwear off. [Petitioner] pressed down hard upon Doe. Doe characterized [Petitioner] as "big" and a "grown-up." When Doe spoke, [Petitioner] "made [him be] quiet." Doe was saying, "ugh, ugh." [Petitioner]'s behavior hurt Doe because he pushed "it" hard on Doe's butt. It made him cry. [Petitioner] pushed his "thingy" into Doe's anus. [Petitioner] made "pee" on Doe's butt. [Petitioner] wiped his penis and Doe's butt off with his shirt. [Petitioner] engaged in this behavior twice.

On another occasion, Doe was likewise sleeping when [Petitioner] jumped over him, took his clothes off, and put his "thingy" in Doe's butt. Doe's brother Marlon opened the door with his key and Doe immediately began putting his clothes back on. Doe was angry because "it was hot."

At trial, Doe testified that [Petitioner] had put his private in Doe's butt on two separate occasions. Both times Doe was sleeping when the [Petitioner] began to sodomize him. Only on the first occasion did "pee" come out of [Petitioner]'s private onto Doe's butt.

On the second occasion, Doe was sleeping in Marlon's room when [Petitioner] came into the room, pulled down Doe's pants, and "put his thing in [Doe's] butt." Doe was laying on his stomach; [Petitioner]'s stomach touched Doe's back. It felt hard and hurt. Doe called for his mother. Later, [Petitioner] told him to be quiet. [Petitioner] told Doe not to tell. Marlon then opened the door and saw what they were doing.

Sandra Murray, a medical doctor, physically examined Doe. She testified that Doe was "very little for his age[,]" 44 pounds and under four feet tall. She indicated that the exam was "totally normal[,]" i.e., did not show any indications of sodomy. However, she also testified that since the exam was not conducted within 72 hours of the act, any injuries would have healed. Only on extremely rare occasions will an injury be significant enough to leave scar tissue which would be noticeable after two weeks.

(LD 6 at 2–4.)

## C. Insufficient Evidence (Ground One)

Petitioner claims there is insufficient evidence of force necessary to support his conviction for aggravated sodomy of a child. (Pet. Ex. A at 5; Traverse 2–5.) He challenges the second incident in August 2006, when Marlon, the victim's brother opened the bedroom door with his key and discovered Petitioner and the victim engaged in a sexual act. (Pet. Ex. A at 5.) Petitioner admits that Marlon witnessed the incident but he argues there was no penetration of his penis inside the victim's anus to sustain his conviction for aggravated sodomy. (Id.)

Petitioner's contentions lack merit.

■ A habeas petitioner is not entitled to relief on an insufficient evidence claim unless he can establish that, given the evidence adduced at trial, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In deciding whether this standard is met, a federal court should take into consideration all of the evidence presented at trial. *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006). However, the Court's task is not to determine whether it believes the evidence at trial established guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19, 99 S.Ct. 2781. The Court must respect the province of the jury to determine the credibility of witnesses, resolve conflicts in the testimony, weigh the evidence, and to draw reasonable inferences from proven facts. *Id.* at 319, 99 S.Ct. 2781; *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir.1995). The Court is not required to rule out every hypothesis except that of guilt. *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781.

In short, the role of the habeas court is limited to determining whether, *after viewing the evidence in the light most favorable to the prosecution*, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319, 99 S.Ct. 2781. Further, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir.2000) (*quoting Jackson*). On federal habeas review, the question is whether the state court unreasonably applied the *Jackson* standard. *Juan H. v. Allen*, 408 F.3d 1262, 1274–75 (9th Cir.2005).

■ Under California law, the crime of aggravated sexual assault requires proof of "'force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person.'" *People v. Cochran*, 103 Cal.App.4th 8, 13, 126 Cal.Rptr.2d 416 (2002) (*quoting* Cal.Penal Code § 269(a)(3)). To establish force, "the prosecution need only show the defendant used physical force of a degree sufficient to support a finding that the act of sexual intercourse was against the will of the victim." *People v. Griffin*, 33 Cal.4th 1015, 1023–24, 16 Cal.Rptr.3d 891, 94 P.3d 1089 (2004). Similarly, duress is defined as "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities" to either "perform" or "acquiesce" in an act to which the victim would not have performed or submitted. *Cochran*, 103 Cal.App.4th at 13–14, 126 Cal.Rptr.2d 416; *People v. Schulz*, 2 Cal.App.4th 999, 1005, 3 Cal. Rptr.2d 799 (1992). In determining whether duress exists, "the total circumstances, including the age of the victim, and his relationship to the defendant are factors to be considered." *Cochran*, 103 Cal.App.4th at 14, 126 Cal.Rptr.2d 416; *People v. Pitmon*, 170 Cal.App.3d 38, 51, 216 Cal.Rptr. 221 (1985).

■ In evaluating this claim on direct appeal, the state court of appeal noted that its task was to determine whether the entire record, reviewed in the light most favorable to the judgment, revealed substantial evidence that would lead a reasonable jury to find Petitioner guilty beyond a reasonable doubt. (LD 6 at 5.) Applying this standard to the record in this case, the appellate court found substantial evidence to support the jury's finding that Petitioner used force or duress to accomplish aggravated sodomy against the victim's will. (*Id.* at 8.) This decision was not a violation

of clearly established Federal law as determined by the United States Supreme Court.

Here, the evidence of force or duress adduced by the prosecution was sufficient to support the jury's findings that Petitioner sodomized the victim, John Doe. Based on Dr. Murray's testimony, the record establishes at the time of the offense, Doe was 7 years old, weighed 44 pounds, and was considered "extremely small for his age." (RT 100–01.) Petitioner was 22 years old and was described by Doe as a "big ... grown up" person. (Clerk's Transcript ("CT") 86.) Petitioner was a close family friend who lived with Doe's family and shared a bedroom with Doe's older brother, Marlon. (RT 54–55.) In Doe's own testimony at trial and his RCAT child forensic interview conducted by social services, he stated that on the night of the second incident, he was sleeping in Marlon's bedroom when Petitioner entered the room, locked the door, and jumped over his back. Laying on their sides, Petitioner then took his own clothes off, pushed his stomach into Doe's back, pulled down Doe's pants and underwear, and proceeded to "put his thing in [Doe's] butt." Doe testified that the "thingy" felt hard and was hurting him. Doe called for his mother but Petitioner told him to keep quiet and not to tell anyone. Doe stated that Marlon then opened the door and Doe immediately pulled up his pants. (Id. at 43–51; 86–95.)

Marlon's testimony at trial also provided much of the evidence necessary to establish Petitioner used sufficient force and duress on the victim to commit aggravated sodomy. Marlon testified he used his key and opened the locked door to the bedroom he shared with Petitioner and, witnessed Petitioner laying on his side wrapped behind Doe with his penis in Doe's anus. (Id. at 57–59.) Marlon also

observed Petitioner had one hand on his own penis and the other hand wrapped around Doe's neck. (Id. at 60.) Marlon testified he immediately grabbed Doe out of the room and later kicked Petitioner out of the house. (Id.) Because the evidence clearly demonstrated that Petitioner used force to accomplish sexual intercourse against Doe's will, this Court agrees with the Court of Appeal's determination that there was ample evidence of force. See Griffin, 33 Cal.4th at 1028, 16 Cal.Rptr.3d 891, 94 P.3d 1089 ("The question for the jury ... was simply whether defendant used force to accomplish intercourse with [the victim] against her will, not whether the force he used overcame [the victim's] physical strength or ability to resist him.")

Petitioner makes the cursory argument that the evidence of force produced from Doe's testimony at trial and in the RCAT interview transcript were limited solely to the allegations in the first incident. As a result, Petitioner contends there is insufficient evidence to show the force he used in the second incident was substantial enough to sustain his conviction for aggravated sodomy. (Pet. Ex. A at 7–11.) Contrary to Petitioner's contention, Doe's trial testimony about the second incident clarified any confusion that may exist in the RCAT interview. As discussed above, aside from the RCAT interview transcript, there was other overwhelming evidence pointing to Petitioner's guilt through the trial testimony of the victim, Marlon, and Dr. Murray.

Regardless, even if Petitioner's conduct in the second incident was insufficient to constitute force, it would still qualify as duress. See Schulz, 2 Cal.App.4th at 1005, 3 Cal.Rptr.2d 799 (finding duress where defendant was victim's uncle, an authority figure, exerted psychological pressure, and physically dominated the victim); People v. Senior, 3 Cal.App.4th 765, 775, 5 Cal. Rptr.2d 14 (1992) (finding duress where

defendant was victim's father, an authority figure, exerted psychological pressure, and physically controlled the victim). As the Court of Appeal aptly reasoned, there was ample evidence that clearly demonstrated Petitioner waited until Doe was in a vulnerable position, asleep in Petitioner's bedroom to commit the sexual act. While Doe was sleeping, Petitioner locked the door to prevent Marlon or anyone else from entering the bedroom, and used his significantly larger physical stature and strength to compel the "extremely small" Doe to submit to Petitioner's sexual demands. *Cochran*, 103 Cal.App.4th at 13–14, 126 Cal. Rptr.2d 416; *Pitmon*, 170 Cal.App.3d at 51, 216 Cal.Rptr. 221. (LD 6 at 9.)

Relying upon *Griffin*, Petitioner asserts, in a cursory fashion, that "aggravated child sodomy requires force 'significantly different from or substantially greater than' the amount of force required to perform the act of sodomy." (Pet. Ex. A at 7.) The Court finds Petitioner's argument is unpersuasive and that his reliance upon *Griffin* is misplaced. Unlike Petitioner's charged offense of aggravated sodomy under which there is no requisite distinction between forcible and nonforcible conduct, the *Griffin* court's analysis was made in the context of forcible lewd act under sections 288(a) and (b). Specifically, the *Griffin* court merely noted that, in the context of forcible rape, ". . . there [is nothing] in the common usage definitions of the term 'force,' or in the express statutory language of section 261 itself, that suggests force in a forcible rape prosecution actually means force 'substantially different from or substantially greater than' the physical force normally inherent in an act of consensual sexual intercourse." *Griffin*, 33 Cal.4th at 1023, 16 Cal.Rptr.3d 891, 94 P.3d 1089.

In sum, by way of his insufficient evidence claim, Petitioner principally takes issue with the jury's interpretation of the evidence in a manner that he believes could have supported a verdict of not guilty despite substantial evidence supporting the jury's verdict to the contrary. However, as discussed above, this Court cannot disturb the jury's determination under these circumstances. *Jackson*, 443 U.S. at 319, 326, 99 S.Ct. 2781.

Based on the above, the Court finds the record shows there was substantial evidence supporting the jury's verdict that Petitioner was guilty of the commitment offense. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the victim's acquiescence was due at least in part to an implied threat of force, violence, danger, hardship, retribution, or duress. Accordingly, Petitioner is not entitled to habeas relief.

### III. RECOMMENDATION

In accordance with the foregoing, IT IS RECOMMENDED that the Court issue an order: (1) approving and adopting this Report and Recommendation; and (2) directing that judgment be entered dismissing this action with prejudice.

Dated: December 17, 2008.