

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBIN LYNN GRESSER, | No. 14-35412 |
| Petitioner - Appellant, | D.C. No. 2:12-cv-02073-HZ |
| v. | MEMORANDUM[*] |
| STEVE FRANKE, Superintendent TRCI, | |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Argued and Submitted October 13, 2015
Portland, Oregon

Before: TASHIMA, GILMAN,[**] and BEA, Circuit Judges.

Robin Gresser appeals from the district court's denial of his federal habeas

petition, alleging that his trial counsel provided constitutionally ineffective

assistance. Following a jury trial in an Oregon state court, Gresser was convicted

of first-degree unlawful sexual penetration with a foreign object and first-degree

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Ronald Lee Gilman, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

sexual abuse. The charges stemmed from an incident between Gresser and FHG, then a 10-year-old girl, during a sleepover at Gresser's house in July 2003.

At Gresser's trial in April 2005, the state called family acquaintances Tara Frost and Zena Delaney as its first two witnesses. Frost's testimony contained the following exchange with the prosecutor:

Q. Did [FHG] ever tell you things that sounded outlandish or like lies?

A. No.

Q. Did she ever try to get your attention in ways that were negative?

A. No, she did not.

Gresser's trial counsel failed to object.

During Delaney's testimony, the following exchange with the prosecutor transpired:

Q. Okay. Now, after [FHG] told you what she did, what did you do?

A. I called the police, and first I called [FHG]'s mom, and then I called the police and told them there's a little girl here that needs to talk to them because I didn't know what to do. I knew this little girl had been – you could tell she was telling the truth. I mean she's – you could just tell.

Again, Gresser's trial counsel did not object. Trial counsel's failure to object to these portions of Frost's and Delaney's testimony forms the basis of Gresser's ineffective-assistance-of-counsel claim presented on appeal.

The state post-conviction court failed to discuss this particular claim, causing the parties to disagree on whether we should apply a deferential or de novo standard of review. Because we would reach the same conclusion under either standard, we will assume, without deciding, that de novo review applies.

A defendant is denied his Sixth Amendment right to the effective assistance of counsel when (1) his "counsel's performance was deficient," and (2) that "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, "the defendant must show that [his] counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. We evaluate deficient performance against the backdrop of "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and we recognize "the wide latitude counsel must have in making tactical decisions." *Id.* at 689.

Gresser asserts that his trial counsel provided deficient performance by failing to object when both Delaney and Frost offered testimony that vouched for FHG's credibility. Failing to object to inadmissible evidence can constitute

-3-

deficient performance if "it is reasonable that the trial court would have granted" the objection. *Boyde v. Brown*, 404 F.3d 1159, 1173 (9th Cir. 2005) (internal quotation marks and citation omitted); *see also Delgadillo v. Woodford*, 527 F.3d 919, 928 (9th Cir. 2008). "[I]n Oregon a witness . . . may not give an opinion on whether he believes a witness is telling the truth." *State v. Middleton*, 657 P.2d 1215, 1221 (Or. 1983).

With respect to Delaney, her testimony clearly commented on FHG's credibility. Delaney opined that "I knew this little girl had been – you could tell she was telling the truth. I mean she's – you could just tell." This is the paradigm of impermissible vouching testimony under Oregon law. *See id.* Accordingly, the trial court almost certainly would have sustained an objection to Delaney's testimony. This conclusion, however, does not end our inquiry.

Because defense counsel possesses wide latitude to make tactical decisions during trial, *Strickland*, 466 U.S. at 689, we must determine if any strategic choices would justify counsel's failure to object. An affidavit submitted by Gresser's trial counsel as part of the post-conviction proceedings indicates that one of the reasons he chose not to object to Delaney's vouching testimony was that he "did not want to highlight that statement for the jury by objecting."

Delaney's vouching testimony was elicited after the government asked: "Okay. Now, after [FHG] told you what she did, what did you do?" This question could not have reasonably given notice that Delaney was about to opine on FHG's credibility. Accordingly, the first opportunity for Gresser's trial counsel to object would have been after Delaney had uttered her vouching testimony. And whether to object to damaging testimony at the risk of drawing the jury's attention to it is a tactical decision. Accordingly, the failure to object to Delaney's vouching testimony was a valid strategic decision.

Frost's testimony is a different story. Gresser advances a substantial argument that the failure of his trial counsel to object to the two above-quoted questions addressed to Frost, which go directly to FHG's credibility, constituted deficient performance. We need not resolve this question, however, because Gresser is unable to establish prejudice. A defendant is prejudiced by his counsel's deficient performance when he "show[s] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

True enough, several factors weigh in favor of a finding of prejudice. FHG's credibility was the central issue at trial and, after the sleepover at Gresser's house, FHG provided conflicting statements regarding whether Gresser penetrated

-5-

her. Moreover, Gresser testified that he never molested FHG, and his then-estranged wife provided alibi testimony. Finally, the jury's verdict to convict was not unanimous.

Other factors, however, strongly weigh against a finding of prejudice. The sum total of Frost's reference to FHG's credibility was contained in five words of response to two questions during a multi-day trial in which over a dozen witnesses testified. Because the brief exchange comprised only a passing reference among a host of other testimony, Frost's response likely had little impact on the jury's overall assessment of FHG's credibility. This is especially so because the jury had the opportunity to evaluate directly both FHG's and Gresser's credibility during their live testimony in court. Further, the jury heard FHG's videotaped interview with a social worker, which was recorded within several weeks of the abuse, and it heard from other witnesses as to what FHG had told them.

The jury therefore had ample opportunity to assess the consistency of FHG's statements at trial with those she previously provided to others. Although her statements to the other witnesses were not completely consistent, there was consistency regarding a key fact central to the case, i.e., that FHG experienced pain and bleeding as a result Gresser's alleged abuse. We therefore conclude that there

is no reasonable probability that, but for Frost's vouching testimony, the outcome of Gresser's trial would have been different.

For all of the above reasons, **WE AFFIRM**.